**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **No. 08-CR-4086-DEO** |
| v. | |
| CALVIN D. CLEVERINGA, | **ORDER** |
| Defendant. | |

This matter comes before the Court on the Defendant, Calvin D. Cleveringa's "Motion To Enforce Terms Of Stipulation And Consent Order and Motion To Dismiss Indictment." Docket No. 16-1. In that motion, the Defendant moves to enforce the terms of a stipulation and consent order entered into between the Defendant and the Federal Deposit Insurance Corporation (FDIC) and requests this Court to dismiss the November 2008 Indictment pursuant to the terms of the consent order. The motion is supported by the Affidavit of Calvin Cleveringa, which provides:

> I agreed to be prohibited from participating in any manner in the conduct of the affairs of any financial institution or organization. In addition, I agreed to be prohibited from soliciting, procuring, transferring, attempting to transfer, voting, or attempting to vote any proxy consent or authorization with respect to any voting rights in any financial

> institution based upon the FDIC's determination that I had engaged or participated in violations of law and regulations and/or unsafe or unsound banking practices and/or breaches of fiduciary duty as an institution affiliated party of American State Bank in Sioux Center, Iowa.

Docket No. 16-3 at 1. In his Affidavit, Mr. Cleveringa continues by saying:

> I was assured by John J. Oldenburg, Jr., Senior Attorney for FDIC, that if I paid [a] $5,000.00 [fine] and signed the Stipulation and Consent Order no further proceedings of any kind would be pursued against me in the future and that the matter would be fully closed and resolved. In reliance on this representation made by Mr. Oldenburg, I believed this matter had all been put behind me and that further proceedings could not be pursued by any representative of the United States Government. The FDIC agent never informed me that criminal proceedings could potentially be brought or any other type of proceeding with respect to my involvement and employment at American State Bank.

Docket No. 16-3 at 2.

In the Defendant's brief (Docket No. 16-2), the Defendant calls four different cases to the attention of the Court: Margalli-Olvera v. I.N.S., 43 F.3d 345 (8th Cir. 1994); Thomas v. I.N.S., 35 F.3d 1332 (9th Cir. 1994); United States v. Harvey, 791 F.2d 294 (4th Cir. 1986); and Davis v. United

2

States, 649 F. Supp. 754 (C.D. Ill. 1986). These cases generated considerable argument at the prolonged hearing that the Court held on May 4, 2009.

On page 4 of the Defendant's brief, the Defendant asserts the following:

> Based on the logic of Margalli-Olvera and Thomas, it is clear that one agency of the federal government, under certain circumstances, may bind other federal governmental agencies.

Docket No. 16-2 at 4. In the same brief on page 6, the Defendant cites to the Davis and Harvey decisions for further support of this assertion.

In each of these cited cases, a member of the United States Attorney's Office made a promise not to take certain actions against the defendant involved. See Margalli-Olvera, 43 F.3d at 348 ("'[I]f the defendant participates fully and truthfully in a debriefing, . . . the United States will recommend against deportation. Otherwise, the United States will remain silent regarding deportation.'") (quoting plea agreement); Thomas, 35 F.3d at 1335 ("In return [for the defendant's cooperation], the government agreed to advise the Parole Commission of his cooperation, and promised not to

3

oppose motions made by [the defendant's] attorney for reduction of sentence or relief from deportation."); Harvey, 791 F.2d at 296 n.1 ("'The Eastern District of Virginia further agrees not to prosecute [the defendant] for any other possible violations of criminal law arising from the offenses set out in the indictment or the investigation giving rise to those charges.'") (quoting government's oral presentation of plea agreement); Davis, 649 F. Supp. at 755 ("'The government agrees that it will not use any statement or testimony by the defendant, *either directly or indirectly, to bring additional criminal charges* against the defendant . . .'") (quoting plea agreement). Further, it is clear that the United States Attorney's Office was both a party to, and had an opportunity to participate in, each of these cited cases.

In this case, the attorney for the FDIC testified he has no authority to decide whether or not there will be a criminal prosecution by another governmental agency. He further testified that the civil cases he settles almost always are followed by criminal prosecution.

Moreover, neither Mr. Cleveringa nor his attorney ever spoke to the United States Attorney or received any promises

from the United States Attorney. The criminal case was not called to the attention of Mr. Cleveringa or his attorney for about two years after the civil suit was closed. This case involves an entirely distinct situation than the four cases cited by the Defendant.

28 U.S.C. § 547 provides in pertinent part:

> Except as provided by law, each United States Attorney, within his district, shall-
>
> (1) Prosecute for all offenses against the United States

Id. § 547(1). One treatise explains the scope of this duty as follows:

> Although ultimate responsibility for determining when the United States Government sues and whom it sues rests in the Attorney General of the United States, a United States Attorney is vested with large discretionary powers in deciding whether there is [to] be a prosecution in a particular case. Indeed, in the ordinary case, so long as a prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute and what charge to file or bring before a grand jury generally rests entirely in his or her discretion.

63C Am. Jur. 2d Prosecuting Attorneys § 43 (2008) (citations omitted). This view of the duties and authority of the United

5

States Attorney finds ample support in prior cases.

For example, in <u>United States v. Kysar</u>, 459 F.2d 422 (10th Cir. 1972), the Tenth Circuit Court of Appeals stated as follows:

> It is likewise the duty of the United States Attorney to direct the attention of the grand jury to crimes which may have been committed. He has the power to prosecute or not to prosecute; this decision is not reviewable by any court.

459 F.2d at 424. And in the case of <u>New York v. Muka</u>, 440 F. Supp. 33 (N.D.N.Y. 1977), the Court stated:

> Federal crimes are prosecuted by the United States Attorney, who possess an absolute and unreviewable discretion as to what crimes to prosecute.

440 F. Supp. at 36 (citing 28 U.S. C. § 547(1) and <u>Kysar</u>, 459 F.2d 422). Finally, in the case of <u>Spillman v. United States</u>, 413 F.2d 527 (9th Cir. 1969), the Court held:

> This court cannot inquire into the motives of the United States Attorney for prosecuting this appellant. The United States Attorney must be given wide latitude in order to effectively enforce the federal criminal laws.

413 F.2d at 530.

In this case, the lead attorney for the FDIC had several conversations with Mr. Cleveringa's counsel, and the two

exchanged several letters and other documents with one another.  None of those conversations or documents included any mention that there might later be criminal charges.  While this may have left the wrong impression, it did not preclude the instant criminal prosecution.

This Court was, several years ago, the United States Attorney for the Northern District Of Iowa.  While I cannot claim to have perfect recollection of my actions during that time, I can say that it was clear then that no other department of the government that was involved in any civil matter could, acting alone, say or do anything that would prevent the matter from becoming criminal in nature.  Still, had I been presented with a similar situation — one in which it was for me to decide whether to prosecute an individual in the Defendant's position for conduct that had already prompted civil action by another agency — I hope that I would have alerted that individual that the actions of the other agency did not preclude criminal prosecution by my office; if I did not, then I think I should have out of basic fairness.  But, as set out in the cases cited above, no court can second-guess the decisions of the United States Attorney's Office in this

regard, and in any event there is nothing to indicate the U.S. Attorney in this case was even aware of the FDIC's case against Mr. Cleveringa until after it had been resolved.

**IT IS THEREFORE HEREBY ORDERED** that the "Motion To Enforce Terms Of Stipulation And Consent Order and Motion To Dismiss Indictment" (Docket No. 16-1) is, for all the reasons set out above, hereby **denied**.

**IT IS SO ORDERED** this 14th day of May, 2009.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa